Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEROME ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>CALLAWAY GOLF COMPANY, OLIVER G. BREWER, III, SAMUEL H. ARMACOST, SCOTT H. BAXTER, JOHN C. CUSHMAN, III, LAURA J. FLANAGAN, RUSSELL L. FLEISCHER, JOHN F. LUNDGREN, ADEBAYO O. OGUNLESI, LINDA B. SEGRE, and ANTHONY S. THORNLEY,<br><br>Defendants. | Case No. '21CV0171 BEN JLB<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jerome Anderson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Callaway Golf Company ("Callaway" or the "Company") and the members of Callaway's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge with Topgolf International, Inc. ("Topgolf") through Callaway's wholly owned subsidiary 51 Steps, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On October 27, 2020, Callaway announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, Callaway will issue approximately 90 million shares of common stock to the stockholders of Topgolf, which will be calculated using an exchange ratio based on (i) an equity value of Topgolf of approximately $1.986 billion, and (ii) a price per share of Callaway common stock fixed at $19.40.

3. On November 24, 2020, Callaway filed a Form S-4 Registration Statement (as amended, the "S-4") with the SEC. The S-4 is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the financial projections for Callaway and the pro forma company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); and (iii) Goldman's potential conflicts of interest. Without additional information, the S-4 is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material

information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Callaway.

9. Defendant Callaway is a Delaware corporation, with its principal executive offices located at 2180 Rutherford Road, Carlsbad, California 92008. Callaway's common stock trades on the New York Stock Exchange under the ticker symbol "ELY."

10. Defendant Oliver G. Brewer, III ("Brewer") has served as President, Chief Executive Officer, and a director of the Company since March 2012. Defendant Brewer has also served as a director of Topgolf since 2012.

11. Defendant Samuel H. Armacost has served as a director of the Company since April 2003.

12. Defendant Scott H. Baxter has served as a director of the Company since November 2019.

13. Defendant John C. Cushman, III has served as a director of the Company since April 2003.

14. Defendant Laura J. Flanagan has served as a director of the Company since November 2018.

15. Defendant Russell L. Fleischer has served as a director of the Company since May 2018.

16. Defendant John F. Lundgren has served as a director of the Company since March 2009 and Chairman of the Board since May 2020.

17. Defendant Adebayo O. Ogunlesi has served as a director of the Company since January 2010.

18. Defendant Linda B. Segre has served as a director of the Company since August 2015.

19. Defendant Anthony S. Thornley has served as a director of the Company since April 2004.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

21. Relevant non-party Topgolf is a Delaware corporation, with its principal executive offices located at 8750 N. Central Expressway, Suite 1200, Dallas, Texas 75231. Callaway currently owns approximately 14% of Topgolf's outstanding common shares.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

22. Callaway is a premium golf equipment and active lifestyle company with a portfolio of global brands, including Callaway Golf, Odyssey, OGIO International, Inc., TravisMathew, LLC, and Jack Wolfskin. Callaway designs, manufactures and sells high quality golf clubs. Callaway has evolved over time from a manufacturer of golf clubs to a leading manufacturer and distributor of a full line of premium golf equipment and accessories. Callaway recently expanded its soft goods business to include lifestyle product lines that are complementary to golf.

23. On November 9, 2020, Callaway announced its third quarter 2020 financial results, including record net sales of $476 million, a 12% increase compared to the third quarter of 2019. Net income was $52 million, a 69% increase compared to $31 million in the third quarter of 2019. Diluted earnings per share was $0.54, a 69% increase compared to $0.32 in the third quarter of 2019. Adjusted EBITDAS was $87 million, a 53% increase compared to $57 million in the third quarter of 2019. Commenting on the Company's third quarter financial results, defendant Brewer stated:

> The world is embracing golf in a way that has led to a record quarter for the industry and our company. Our golf business is now experiencing unprecedented demand and our soft goods business is recovering significantly more quickly than we expected; our third quarter results reflect this momentum. Our recent investments into our e-commerce capabilities have proven particularly valuable, showing strong growth across all of our business segments this year including 108% growth in e-commerce for our apparel brands in Q3.

24. On October 27, 2020, Callaway and Topgolf issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

CARLSBAD, Calif. and DALLAS, Oct. 27, 2020 -- Callaway (NYSE: ELY) and Topgolf Entertainment Group ("Topgolf") today announced that the companies have entered into a definitive merger agreement. Under the terms of the agreement, Callaway and Topgolf will combine in an all-stock transaction creating a global golf and entertainment leader. The number of shares to be issued is based upon an implied equity value of Topgolf of approximately $2 billion, including the 14% already owned by Callaway.

Topgolf is the leading tech-enabled golf entertainment business, with an innovative platform that comprises its groundbreaking open-air venues, revolutionary Toptracer technology and innovative media platform with a differentiated position in eSports. Topgolf generated approximately $1.1 billion in revenue in 2019 and has grown at a 30% compound annual rate since 2017. Callaway is a leader in the global golf equipment market with a scale position in active-lifestyle soft goods and a proven ability to deliver strong returns, including company growth that has exceeded golf market growth for seven consecutive years.

The companies together will be able to accelerate growth, including through:

- **Fully Funded High Growth Opportunities:** Topgolf is a high-growth platform with attractive unit economics across its businesses that will benefit from Callaway's strong financial position that can fully fund Topgolf's growth plans at an attractive cost of capital.

- **A Highly Complementary Fit:** The two companies share a focus on golf and active-lifestyle consumers. With Topgolf's 90 million consumer touch points a year, the combined company will benefit from a compelling family of brands with reach across multiple channels including retail, venues, e-commerce and digital communities. Topgolf is introducing new players to the game of golf, a powerful trend that benefits Callaway's golf equipment and soft goods businesses.

- **Enhanced Resources to Accelerate Growth:** The combined company's industry-leading sales, marketing and partnership infrastructure will drive traffic, increase same venue sales and accelerate conversion of new business opportunities. Together, Callaway and Topgolf's significantly expanded consumer reach will drive increased promotion, exposure and sales of equipment and apparel to golfers and non-golfers alike.

- **Innovation to Drive Long-term Potential:** A shared innovative culture creates exciting long-term opportunities including the potential to distribute content across connected screens for instruction, fitness and lifestyle.

"Together, Callaway and Topgolf create an unrivaled golf and entertainment business," said Chip Brewer, President and Chief Executive Officer of Callaway. "This combination unites proven leaders with a shared passion for delivering exceptional golf experiences for all – from elite touring professionals to new and aspiring entrants to the game. We've long seen the value in Topgolf and we are

confident that together, we can create a larger, higher growth, technology-enabled global golf and entertainment leader. Callaway's strong financial profile will enable the combined company to accelerate innovation, develop exciting new products and experiences, and create compelling value for shareholders, while providing the dedicated teams of both companies more opportunities to showcase their talents and complementary capabilities."

"We are excited to join the Callaway family and strengthen the experiences we create at the intersection of sports and tech-driven entertainment," said Dolf Berle, Chief Executive Officer of Topgolf. "Fueled by a tremendous team of associates and a diverse offering across our venues, Toptracer, and media platform, Topgolf is truly changing the landscape of the industry by making golf more inclusive and accessible to people of all ages, demographics and skill levels. As part of Callaway, we plan to grow our leadership position by leveraging Callaway's brand reputation, industry relationships and financial strength to connect more communities around the world to the Topgolf experience."

Callaway first invested in Topgolf in 2006, and the companies have maintained a strong partnership since, including an exclusive golf partnership agreement at all Topgolf venues. Topgolf has achieved rapid growth and strong customer engagement since its founding in 2000, driven by several platforms, including:

- **Venues** – The company's signature platform defined by its immersive gameplay, proprietary technology and local, high-quality food and beverage offers a unique social destination for all. With its open-air, climate-controlled bays, Topgolf venues are structurally advantaged to benefit from consumer preferences for outdoor activities. Topgolf has 63 locations around the globe – including a robust pipeline of new openings – serving more than 23 million guests in 2019 with more than 50% of consumers identifying as non-golfers.
- **Toptracer** – A leading ball-tracing technology best known for transforming televised golf is now being brought directly to everyday golf. By bringing professional tracing technology to mobile devices and driving ranges, Topgolf is enhancing the golf experience. The technology has been deployed to more than 7,500 range bays in three years (representing approximately one percent penetration of the total addressable market). This business unit has achieved revenue growth of 233% in the past three years.
- **Media** – With World Golf Tour, a leading mobile golf game with 28 million members as of 2019, Topgolf has built a strong digital presence in the game of golf. The company's proprietary, in-house gaming capabilities also create innovative sponsorship and consumer engagement opportunities throughout Topgolf's community of players competing across the company's interconnected digital and in-person platforms.

"Since its inception, Topgolf has created an innovative, tech-inspired twist on the golf driving range experience, turning it into a global entertainment and sports movement. Our track record of creativity and diversity of offerings will only grow stronger as part of Callaway, a global leader in the industry," said Erik Anderson, executive chairman of Topgolf. "All of us are looking forward to building new experiences, reaching new

audiences and solidifying our digital infrastructure as we connect communities around the globe."

In addition to Callaway, the current Topgolf ownership includes Providence Equity Partners, WestRiver Group and Dundon Capital Partners, which added: "This is a natural combination that brings together two complementary businesses at the center of one of the most dynamic sports and entertainment experiences available today. We are excited to support their continued growth as a united company."

**Financial Benefits and Transaction Structure**

Callaway and Topgolf both delivered strong financial results immediately before the COVID pandemic and have since recovered ahead of expectations. Both companies are well positioned to take advantage of both short- and long-term changes in consumer behavior as a result of the pandemic. This includes favorable trends in rounds played and growth in beginning and returning golfers as well as broader consumer preferences for outdoor activities. The combined company will have a highly diversified revenue mix, including Golf Equipment, 30%; Topgolf, 46%; and Softgoods, 24%.

The combined company will also benefit from a strong financial profile, including:

- Pro forma revenue of approximately $2.8 billion based on fiscal year 2019 results that is expected to grow to approximately $3.2 billion by 2022 and at approximately 10% per year in the years following
- Pro forma adjusted EBITDAS of $270 million based on fiscal year 2019 results that is expected to grow to approximately $360 million by 2022 and at mid-to-high teens per year in the years following
- Funded leverage of approximately 3.6x in 2022, with opportunities to de-lever from there

Topgolf is in the early stages of its growth with more than ten years of planned unit growth opportunity in its U.S. venues business and just 2% addressable market penetration in international venues and 1% in the Toptracer Range business. The company has a proven ability to innovate to expand its addressable market and capture the potential of games and content on its interconnected platform.

Callaway's continued strong cash generation and ample liquidity, including more than $630 million of cash and available credit facilities as of Q3 2020, position the company to fund Topgolf's continued growth with significant ability to pay down debt at the same time.

Under the terms of the merger agreement, Callaway will issue approximately 90 million shares of its common stock to the shareholders of Topgolf, excluding Callaway, which currently holds approximately 14% of Topgolf's outstanding shares. Upon completion of the merger, Callaway shareholders will own approximately 51.5%

and Topgolf shareholders (excluding Callaway) will own approximately 48.5% of the combined company on a fully diluted basis.

The number of shares issued is based upon an implied equity value of Topgolf of $1.986 billion (including Callaway's ownership position). The number of shares issued is also based upon a fixed price of Callaway common stock of $19.40 per share. Callaway will assume Topgolf's net debt, which is estimated to be $555 million at closing, resulting in an estimated enterprise value for Topgolf of approximately $2.5 billion.

**Governance and Leadership**

Upon closing, the combined company's Board of Directors will consist of 13 directors, including three directors appointed by Topgolf shareholders. Chip Brewer will continue to lead the combined company as President and Chief Executive Officer. Dolf Berle will continue to lead the Topgolf business through a transition period following the close of the transaction, at which time he intends to step down to pursue other leadership opportunities. John Lundgren will continue as Chairman of the Board of the combined company, while Erik Anderson will serve as Vice Chairman.

Topgolf will continue to operate from its headquarters in Dallas, Texas.

**Timing and Approvals**

The transaction is subject to the approval of the shareholders of both Callaway and Topgolf, as well as other customary closing conditions, including required regulatory approval. The parties expect to complete the transaction in early 2021, subject to satisfaction of these conditions.

**<u>The S-4 Misleads Callaway Stockholders by Omitting Material Information</u>**

25. On November 24, 2020, defendants filed the materially misleading and incomplete S-4 with the SEC. Designed to convince Callaway's stockholders to vote in favor of the Proposed Transaction, the S-4 is rendered misleading by the omission of critical information concerning: (i) the financial projections for Callaway and the pro forma company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman; and (iii) Goldman's potential conflicts of interest.

***Material Omissions Concerning the Financial Projections for Callaway and the Pro Forma Company***

26. The S-4 omits material information regarding the financial projections for Callaway and the pro forma company.

27. For example, in connection with rendering its fairness opinion, Goldman reviewed, among other things:

- certain internal financial analyses and forecasts for Callaway on a stand-alone basis (as further described in the section titled "—Certain Financial Forecasts—Certain Callaway Unaudited Financial Forecasts") (the "Callaway Forecasts"), and on a pro-forma basis giving effect to the transaction as prepared by the management of Callaway and approved for Goldman Sachs' use by Callaway (collectively with the Callaway Forecasts, the "Forecasts"), including certain operating synergies projected by the management of Callaway to result from the Merger, as approved for Goldman Sachs' use by Callaway, which are referred to as the "Synergies."

S-4 at 106. Yet, the S-4 fails to disclose the forecasts for Callaway on a pro-forma basis giving effect to the Proposed Transaction as prepared by the management of Callaway, as well as the operating synergies projected by Callaway management.

28. The S-4 also fails to disclose the pro forma unlevered free cash flow for Callaway pro forma for the merger for the three months ended December 31, 2020 and fiscal years 2021 through 2025, utilized by Goldman for its *Illustrative Discounted Cash Flow Analysis* of Callaway pro forma for the merger.

29. Moreover, the S-4 fails to disclose the definition and all line items underlying unlevered free cash flows and EBITDAS.

30. The omission of this material information renders certain portions of the S-4 materially misleading, including, *inter alia*, the following sections of the S-4: "Certain Financial Forecasts" and "Opinion of Callaway's Financial Advisor."

***Material Omissions Concerning Goldman's Financial Analyses***

31. The S-4 fails to disclose material information regarding Goldman's financial analyses.

32. The S-4 describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Callaway's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

33. With respect to Goldman's *Selected Companies Analysis*, the S-4 fails to disclose the individual multiples and financial metrics for each of the comparable companies observed by Goldman in the analysis.

34. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of Callaway on a standalone basis, the S-4 fails to disclose: (i) the terminal year estimate of free cash flow to be generated by Callaway; (ii) the range of illustrative terminal values for the Company; (iii) the individual inputs and assumptions underlying the discount rates ranging from 7.0% to 8.0% and 8.7%; (iv) the estimated benefits of Callaway's net operating losses ("NOLs") for fiscal years 2020 through 2021; (v) Callaway's debt, as used in the analysis; and (vi) the number of fully diluted outstanding shares of Callaway.

35. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of Callaway on a standalone basis, the S-4 fails to disclose: (i) Callaway's estimated next 12 months Adjusted EBITDAS at the end of each of the fiscal years 2021 to 2024; (ii) the individual inputs and assumptions underlying the discount rate of 8.7%; (iii) Callaway's debt, as used in the analysis; and (iv) the number of fully diluted shares of Callaway common stock.

36. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of Callaway pro forma for the merger, the S-4 fails to disclose: (i) the pro forma unlevered free cash flows for Callaway for the three months ended December 31, 2020 and fiscal years 2021 through 2025; (ii) the

terminal year estimate of free cash flow to be generated by Callaway pro forma for the merger; (iii) the range of illustrative terminal values for Callaway pro forma for the merger; (iv) the individual inputs and assumptions underlying the discount rates ranging from 8% to 10% and 9.3%; (v) the estimated benefits of Callaway's NOLs for fiscal years 2021 through 2024; (vi) Callaway's debt, as used in the analysis; and (vii) the number of fully diluted shares pro forma for the merger.

37. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis* of Callaway pro forma for the merger, the S-4 fails to disclose: (i) Callaway's estimated next 12 months Adjusted EBITDAS pro forma for the merger at the end of each of the fiscal years 2021 to 2024; (ii) the individual inputs and assumptions underlying the discount rate of 9.3%; (iii) Callaway's debt; (iv) the assumed amount of Callaway's cash and cash equivalents as of the relevant fiscal year-end; and (v) the number of fully diluted shares of Callaway common stock pro forma for the merger.

38. The omission of this material information renders certain portions of the S-4 materially misleading, including, *inter alia*, the following sections of the S-4:"Opinion of Callaway's Financial Advisor" and "Certain Financial Forecasts."

***Material Omissions Concerning Goldman's Potential Conflicts of Interest***

39. The S-4 fails to disclose material information concerning the potential conflicts of interest faced by Goldman.

40. The S-4 fails to specify the amount of Goldman's compensation that is contingent on closing of the Proposed Transaction.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The omission of this material information renders certain portions of the S-4 materially misleading, including, *inter alia*, the following section of the S-4: “Opinion of Callaway’s Financial Advisor.”

43. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the S-4. The S-4 was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Callaway’s and the pro forma company’s financial projections, financial analyses that support the fairness opinion provided by Goldman, and Goldman’s potential conflicts of interest. The defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

47. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the S-4, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Callaway within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Callaway, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of

each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

54. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Callaway's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Callaway, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 29, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*